Donald Ray HARLAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 683S232.

Supreme Court of Indiana.

July 2, 1985.

John B. Wilson, Jr., Bean Blossom, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of murder, Ind.Code § 35-42-1-1 (Burns 1979) and was sentenced to thirty (30) years imprisonment. His direct appeal presents two issues for our review as follows:

(1) Whether the trial court erred in refusing to give Defendant's tendered final instructions numbers 3 and 7, pertaining to the defense of intoxication and self-defense;

(2) Whether the trial court erred in giving State's instruction number 4.

The evidence supportive of the verdict reveals that Defendant confronted Danny McCreery while the latter was riding a motorcycle around a field at the home of his mother. Defendant arrived, alone, by automobile and exited holding a rifle. McCreery walked toward Defendant who said to him, "I warned you about messing with my wife" and then shot and killed him. At that time Defendant's wife was in the house with McCreery's mother. Three weeks earlier, while McCreery was staying in Defendant's home, Defendant awoke to find his wife and McCreery engaged in sexual intercourse.

Defendant argues that the trial court erred by refusing to give his tendered instructions numbers 3 and 7, which are as follows:

### Instruction Number 3

"Under a statue [sic] of this state, it is a defense (A) that the person who ingaged [sic] in the prohibited conduct did so while he was intoxicated, if the intoxication resulted from the introduction of a substance into his body:

(1) without his consent; or

(2) when he did not know that the substance might cause intoxication,

(3) Voluntary intoxication is a defense only to the extent that it negates specific intent."

### Instruction Number 7

"From what has been stated in other instructions concerning the burden which rests upon the State of Indiana to prove, among other things and beyond a reasonable doubt, that the accused unlawfully killed another, if [sic] follows that if death resulted from proper exercise by the accused of the right of self defense the killing was not unlawful. Therefore, in a case involving the issue of whether or not the accused acted in self defense, the burden rests upon the State of Indiana to establish beyond a reasonable doubt that death did not result from the proper exercise on the part of the accused of the right of self defense."

When the trial court refuses to give a jury instruction, this Court, in determining whether error occurred, must determine whether the tendered instruction correctly states the law; whether there was evidence in the record to support the giving of the instruction; and, whether the substance of the instruction was adequately covered by other instructions which were given. *Tawney v. State* (1982), Ind., 439

N.E.2d 582, 587; *Davis v. State* (1976), 265 Ind. 476, 478, 355 N.E.2d 836, 838.

■ With respect to Instruction Number 3, the trial court wrote upon it, "Refused— no evidence of intoxication as defense." We agree that the instruction was not warranted by the evidence. The question is whether the evidence of intoxication, if believed, was such that it could have created a reasonable doubt in the jurors' minds that the Defendant acted with the requisite mental state. *Williams v. State* (1980), 273 Ind. 105, 108–109, 402 N.E.2d 954, 956. The record in the case at bar discloses that Defendant had a twenty-five (25) year history of heavy drinking and that after his arrest he suffered delirium tremens,[1] seizures, and alcohol withdrawal. However, by his own admission, he was not intoxicated on the day he shot the victim. Although he testified that he had consumed two or three (2 or 3) beers over a period of several hours on the day of the shooting, he further testified that he ordinarily drank as much as a case of beer per day. The evidence of intoxication was not such that it could have created a reasonable doubt in the jurors' minds that the Defendant had the requisite mental state. Hence, the trial court did not err in refusing to give the instruction. *See Springer v. State* (1982), Ind., 437 N.E.2d 998, 1000.

■ Defendant's additional argument that this instruction should have been given because his heavy consumption of alcohol over a period of several years contributed to his "temporary insanity" is without merit. The jury was properly instructed on the defense of insanity.

■ We question whether the evidence in the case at bar warranted any instruction on self-defense; however, the trial court gave an amended version of Defendant's tendered instruction number 5 pertaining to self-defense. Defendant argues that it was error, then, to refuse to give his Instruction Number 7 regarding the State's burden of proving that he did not act in self-defense. The identical contention has been raised and decided adversely to Defendant's position in *Wash v. State* (1983), Ind., 456 N.E.2d 1009, 1011; *Moore v. State* (1981) 275 Ind. 39, 414 N.E.2d 558, 560; and *Woods v. State* (1974), 162 Ind. App. 316, 323–326, 319 N.E.2d 688, 692–695 (*trans. denied*). In all of those cases, as in the case at bar, the jury was instructed on the State's burden to prove all of the elements of the crime charged beyond a reasonable doubt and on the elements of self-defense. No separate instruction regarding the burden of proof upon the issue of self-defense was necessary.

## ISSUE II

■ After instructing the jury that if it found that the Defendant had acted under "sudden heat" it could find him guilty of voluntary manslaughter and after defining the term "sudden heat," the court instructed the jury that notwithstanding a finding that Defendant had been sufficiently provoked, if there had been sufficient time under the circumstances of the case for his passions to cool, then it could not be found that he committed the offense in sudden heat.

Defendant argues that the incidents which provoked him, i.e. the discovery of his wife in bed with the victim two weeks prior to the shooting, the "flaunting" of the relationship by the victim in the community, and the victim's verbal insults to him, were of a continuous nature and that, in addition, he lacked the capacity for reasonableness or prudence because of his history of alcoholism. Hence, he claims that the shooting "was the culmination of a long series of provocations ... and not the result of a one-time incident which had time to cool."

His argument that the sudden heat extended over a long period of time is an attempt to justify his criminal act according to his own moral code. However, his argument is but a further indication that

---

**1.** In the record and in Defendant's brief, this disease is variously referred to as "dilerium trenimers," "delirium travence," and "dilerium trimmers."

he did not act under "sudden heat" but rather planned to kill the victim.

Moreover, the cases upon which he relies, *Ex Parte Moore* (1868), 30 Ind. 197, *Ferguson v. State* (1874), 49 Ind. 33, and *Welty v. State* (1912), 180 Ind. 411, 100 N.E. 73, do not support his argument that the court should have instructed the jury that sudden heat could be sustained over a period of time. In *Moore*, the Court considered the question of whether sufficient time had intervened between the provocation and the fatal act, under the circumstances of the case, "for passion to subside and reason to interpose[,]" and observed that the time necessary for cooling had never been articulated or made absolute by rule and, in justice, it would not be done but that, rather, each case must be considered in view of its particular circumstances. In *Ferguson*, the Court reversed a conviction for murder because an instruction had provided that in order to reduce a homicide upon provocation, the fatal blow "shall have been given *immediately* upon the provocation given ..." (emphasis added). The Court found that the use of the word "immediately" limited too narrowly the cooling time. Neither of these cases, however, is analogous to the case at bar.

In *Welty*, the Court found no error in an instruction which informed the jury, in relevant part, as follows:

> "If such an interval of time elapsed between the provocation and the act of killing as is reasonably sufficient for reason to resume its sway, the offense is not mitigated to manslaughter.... Whether the provocation was reasonable, and whether sufficient time elapsed between the provocation and the act of killing for the accused to subdue or control his passion, are questions of fact, to be determined by the jury on a consideration of the circumstances of the particular case before them."

*Brown v. State* (1898), 62 N.J.L. 666, 42 Atl. 811, 827, *approved by Welty v. State*, 180 Ind. at 431, 100 N.E. at 82.

Similarly, there was no error in giving the challenged instruction in the case at bar.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.