Jerry SEELEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 48S00–8812–CR–1010.

Supreme Court of Indiana.

Dec. 18, 1989.

Susan K. Carpenter, Public Defender and Laurel A. Elliott, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

In June of 1982, appellant entered into a written plea agreement wherein he pled guilty to Attempted Rape, a Class B felony, Criminal Recklessness, a Class A felony, and Resisting Law Enforcement, a Class D felony. After a hearing on his plea, he was sentenced to twenty (20) years imprisonment. In August of 1983, appellant filed a petition for post-conviction relief which, after a hearing, was granted, and a new trial was ordered.

In August of 1985, a jury trial was conducted and appellant was convicted of At-

tempted Rape, a Class B felony, and Resisting Law Enforcement, a Class D felony. The trial court entered a sentence of ten (10) years enhanced by ten (10) years by reason of aggravating circumstances, as to the attempted rape charge, and a sentence of two (2) years on the resisting law enforcement charge, sentences to run concurrently. In April of 1988, appellant filed his belated motion to correct error, which was overruled, giving rise to this appeal.

The facts are: Shortly after 9:00 a.m. on April 16, 1982, the victim was awakened by the ringing of her doorbell. She put on a bathrobe and answered the door. Appellant represented that he was an insurance salesman and that he was looking for one William Carpenter. The victim advised him that she did not know any William Carpenter, whereupon appellant asked to use her telephone to try to locate the man.

The victim allowed appellant to enter her kitchen for that purpose and in fact attempted to aid him in looking through the telephone book. The victim called the post office to determine, without success, whether a William Carpenter lived in the Markleville mailing area. Appellant continued to look through the telephone book to the point where the victim suggested that he leave and try some other method to locate the man. However, appellant insisted on staying, whereupon the victim went to her bedroom to change into her clothing.

While in the bedroom, she became disturbed because she no longer heard appellant in the kitchen. When she looked out the bedroom door, she saw appellant coming toward her with his pants unzipped. In an obscene manner, he indicated to her he wished to have sexual intercourse. He placed his hand on her and pushed her toward the bed.

The victim ran into an adjoining bathroom and attempted to lock the door. However, appellant shoved his way inside. Then the victim began to scream out the bathroom window for help. However, appellant knocked her to the floor and covered her mouth with his hand. He then began fumbling with the buttons on her bathrobe but stopped when she lost control of her bladder. Appellant then left and the victim was able to observe his automobile.

When the victim attempted to call for help, she discovered that the receiver had been torn from the telephone. It was later found among some bottles in the garage. The victim dressed and drove to a neighbor's house where she telephoned the sheriff's department. From her description of the vehicle, the police were able to intercept appellant on the highway. Three officers were involved in the pursuit of appellant's vehicle. After a high-speed chase during which appellant damaged one of the police vehicles, he was apprehended.

Appellant claims the trial court committed fundamental error by failing to adequately instruct the jury that the prerequisite culpability requirement of the offense of attempted rape applies to the crime attempted and not to the substantial step which constitutes the attempt. The trial court instructed the jury concerning the definition of rape as set out in Ind.Code § 35-42-4-1. He also instructed the jury as to the crime of attempt as set forth in Ind.Code § 35-41-5-1.

Appellant relies upon the case of *Smith v. State* (1984), Ind., 459 N.E.2d 355, wherein this Court reversed a conviction for attempted murder. This Court held that the instructions in that case failed to include the essential element of the offense, namely, that the defendant must have had the specific intent to commit murder in order to be found guilty of attempted murder. However, in *Santana v. State* (1986), Ind., 486 N.E.2d 1010, this Court distinguished *Smith,* over the dissent of its author justice, pointing out that the error in the *Smith* instruction dealt with the second portion of the instruction which focused on the proscribed conduct and not the proscribed result, whereas in *Santana* the jury was properly instructed on that point.

In the case at bar, the instructions are more complete than the instruction in *Smith.* The court gave a complete and accurate instruction as to the definition of the crime of rape. He then gave a complete instruction of the definition of the

crime of attempt to commit rape. He also gave an instruction defining "knowingly" and "intentionally" and further instructed the jury that they were to consider the instructions as a whole.

In *Clemons v. State* (1981), Ind., 424 N.E.2d 113, this Court held that a trial court's instructions, taken as a whole, adequately covered the definition of attempted murder where an instruction on the definition of murder contained the necessary element of specific intent. The instructions given in the case at bar are substantially the same as those given in *Clemons*. We find there was no error in the giving of the instant instructions.

Appellant contends he was denied effective assistance of counsel in that, in addition to counsel's failure to object to the above-discussed instructions, he also was advised not to testify in his own behalf. Counsel had filed a motion in limine asking that the State not be allowed to cross-examine appellant regarding his prior convictions. Appellant had been convicted of second degree criminal sexual conduct in Michigan and lewd and lascivious acts upon the body of a child in California.

After hearing argument on the motion in limine, the trial court denied the motion, indicating that the State would be permitted to cross-examine appellant as to those prior convictions. Faced with this situation, counsel consulted with appellant and convinced him it would be unwise to take the witness stand thus disclosing those convictions to the jury.

■ Appellant now presents a two-pronged argument attempting to demonstrate incompetency of counsel. He maintains that counsel was ineffective because he did not succeed in convincing the trial court that his ruling on the motion in limine was in error, and further, that counsel deprived appellant of his constitutional right to testify in his own behalf by interjecting his own belief that appellant should not testify.

Whether the trial judge erred in his ruling on the motion in limine is immaterial at this juncture. Obviously, counsel believed he was entitled to the motion in limine and

so argued. One hardly can hold him incompetent because he failed in that argument nor can he be held incompetent in advising his client not to take the witness stand once the court had ruled against him. Whether the trial judge was right or wrong in his ruling, it was obvious at that time that appellant, if he took the stand, was going to be cross-examined about his prior convictions and the jury would learn that he had a history of sex offenses. This of course would have been damaging to him.

Contrary to appellant's claim of incompetency, it would appear that competency dictated that counsel advise his client not to take the witness stand. We see nothing in this record to support appellant's claim of ineffective assistance of counsel.

■ Appellant claims the evidence is insufficient to support his conviction of attempted rape. He takes the position that once inside the home, he intuited that the victim wished to have sexual intercourse with him and that all he did was to state his willingness to comply. He contends he took no overt step toward forcing the victim to have sexual intercourse and that the most he did was to suggest it. However, the testimony of the victim belies appellant's claim.

When he attempted to urge her toward the bed, she escaped into the bathroom, and appellant forced his way in behind her. When she attempted to scream for help from the bathroom window, he knocked her to the floor, held his hand over her mouth, and attempted to disrobe her. The fact that the victim screamed for help was verified by a neighbor who heard the screams.

In *Underwood v. State* (1987), Ind., 515 N.E.2d 503, this Court held that the evidence was sufficient to show that the defendant intended to rape the victim even though he had made no statement of his intent to rape, and his only attempt to disrobe the victim was the grabbing of her shorts when she tried to escape. The evidence in the case at bar is much stronger than that in *Underwood*.

In addition to appellant's conduct within the victim's home, we have the evidence of

his flight from the scene. It took the concerted effort of three police officers to capture appellant in a high-speed chase which resulted in damage to one of the police cars in a collision with appellant's vehicle, plus the fact that appellant had torn the receiver from the victim's telephone and thrown it into the garage while leaving her residence.

■ A jury may consider evidence of flight of the accused immediately after the commission of a crime as evidence of his consciousness of guilt. *Gann v. State* (1988), Ind., 521 N.E.2d 330. The evidence in this record is sufficient to support the jury's finding that appellant intended to rape the victim when he accosted her.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.